1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANIEL TREGLIA, | ) | No. C 11-3438 LHK (PR) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| v. | ) | SUMMARY JUDGMENT |
| | ) | |
| MATTHEW CATE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, a state prisoner proceeding *pro se*, filed a complaint under 42 U.S.C.

§ 1983, arguing that Defendants violated his First and Fourth Amendments, as well as state law.

On February 17, 2012, Defendants filed a motion for summary judgment.  Plaintiff has filed an

opposition, along with supporting documents, and Defendants have filed a reply.  On July 16,

2012, the Court offered Plaintiff the opportunity to file a supplemental opposition, in light of

*Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012).  Plaintiff filed a supplemental opposition,

and Defendants filed a supplemental reply.  Having carefully considered the papers submitted,

the Court GRANTS Defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff filed this action, alleging that Defendants violated his First and Fourth

Amendment rights, and state law, when Defendants created and implemented a policy of opening

his incoming legal mail outside of his presence.  Plaintiff also alleges that Defendant Lewis

1    violated his First Amendment right by implementing prison policies that arbitrarily deprived him

2    of several food items he received through the mail.

3            The following facts are taken in the light most favorable to Plaintiff.

4    **I.      Incoming Mail**

5            Defendant Coney opened 17 letters addressed to Plaintiff, outside of Plaintiff's presence.

6    (Compl. at ¶ 13.)  All of the letters bore the return address of attorneys on the outside of the

7    envelopes.  (*Id.* at ¶ 28.)  Defendant Coney stamped all these pieces of mail "does not meet

8    confidential mail requirements."  (*Id.* at ¶ 30.)  Specifically, the following pieces of mail were

9    already opened by Defendant Coney when Plaintiff received them:

10           •        On February 22 and March 31, 2010, Plaintiff received legal mail from the Law

11                    Offices of Mark H. Harris.  (*Id.* at ¶¶ 14-15.)

12           •        On May 7, 2010, Plaintiff received two letters from The Veen Firm – Attorneys at

13                    Law, and on the envelopes were the stamped words, "legal mail."  (*Id.* at ¶ 16.)

14           •        On  May 13, 2010, Plaintiff received "legal mail," from Knox, Lemman,

15                    Anapolsky, Schrimp – Attorneys at Law.  (*Id.* at ¶ 18.)

16           •        On June 18, 2010, Plaintiff received two letters from Murphy, Logan, Bardwell –

17                    A Professional Law Corporation, and Farella, Braun & Martel, Attorneys at Law.

18                    (*Id.* at ¶ 17.)

19           •        On June 24, 2010, Plaintiff received "legal mail," marked "confidential," from the

20                    Law Offices of Kim Hickman.  (*Id.* at ¶19.)

21           •        On July 5, 2010, Plaintiff received "legal mail," marked as such, from Mosley

22                    Collins, III – A Professional Law Corporation.  (*Id.* at ¶ 20.)

23           •        On August 16, 2010, Plaintiff received "legal mail" from Adler-n-Colvin – A

24                    Professional Law Corporation.  (*Id.* at ¶ 21.)

25           •        On September 16, 2010, Plaintiff received two separate pieces of

26                    confidential/legal mail.  One from Morton-n-Germany – Attorneys at Law, and

27                    the other from the Law Offices of Mark H. Harris.  (*Id.* at ¶ 22.)

28           •        On September 28, 2010, Plaintiff received "legal mail" from the Law Offices of

1   Mark H. Harris.  (*Id.* at ¶ 23.)

2   • On September 29, 2010, Plaintiff received "legal mail" from Mosley Collins, III –

3   A Professional Law Corporation.  (*Id.* at ¶ 24.)

4   • On October 21, 2010, Plaintiff received "legal mail" from the Law Offices of

5   Moreno-n-Rivera; Gloria Allred at the Law Offices of Allred, Maroko, and

6   Goldberg; and also from the Law Offices of Boskovich-n-Appleton.  (*Id.* at ¶¶

7   25-26.)

8   • On November 2, 2010, Plaintiff received "legal mail" from Farella, Braun, &

9   Martell – Attorneys at Law.  (*Id.* at ¶ 27.)

10  • On December 19, 2010, Defendant Coney opened a letter from Koskoff,

11  Attorneys at Law.  (*Id.* at ¶ 26.)

12      Plaintiff filed an administrative grievance, complaining that the mail was opened outside

13  of his presence even though it was clearly legal/confidential mail.  Defendant Lewis denied

14  Plaintiff's grievances regarding the previously opened mail on the basis that PBSP policies, i.e.,

15  PBSP Operating Procedure Supplement No. 54010.12.3, require attorneys to put their names and

16  titles on the envelope, and that "Law Offices of" is not sufficient to indicate legal or confidential

17  mail. (Compl. at ¶¶ 31, 38; Def. Req. for Jud. Not., Ex. A at ¶¶ 7-9.)  Plaintiff alleges that

18  Defendant Lewis implemented and authorized this policy.  (Compl. at ¶ 32.)

19  **II.   Confiscation of Food**

20      Plaintiff is housed in the Secured Housing Unit ("SHU") and is in privilege group D.

21  (Compl. at ¶ 54.)  Inmates in Group D may receive food items in their packages, including, *inter*

22  *alia*, top ramen noodles, cheese spread, candy, beef sticks, and summer sausages.  (*Id.* at ¶ 55.)

23      On August 24, 2010, Plaintiff received notice from PBSP officials that the following

24  items were confiscated from his packages:  Yakisoba noodles, top ramens, cheese spread,

25  Hershey Miniatures, tea packs, beef and cheese sticks, Kippered beef sticks, and summer

26  sausage. (*Id.* at ¶ 56.)  The items were withheld pursuant to PBSP Operating Procedure No. 806.

27  (*Id.* at ¶ 57; Decl. Lewis, Ex. A.)  Plaintiff argues that the CDCR DOM § 54030.1 provides that,

28  prior to getting an exemption for property items, Defendant Lewis should have included a

1  justification and rationale for the request.  (Compl. at ¶ 58.)  Defendant Lewis has not done so.

2  (*Id.* at ¶ 59.)

3  <center>**ANALYSIS**</center>

4  **I.    <u>Standard of Review</u>**

5         Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

6  that there is "no genuine issue as to any material fact and that the moving party is entitled to

7  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect

8  the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

9  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

10  verdict for the nonmoving party.  *Id.*

11        The party moving for summary judgment bears the initial burden of identifying those

12  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

13  issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving

14  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

15  reasonable trier of fact could find other than for the moving party.  But on an issue for which the

16  opposing party will have the burden of proof at trial, as is the case here, the moving party need

17  only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.*

18  at 325.

19        Once the moving party meets its initial burden, the nonmoving party must go beyond the

20  pleadings, and by its own affidavits or discovery, "set forth specific facts showing that there is a

21  genuine issue for trial."  Fed. R. Civ. P. 56(e).  The Court is only concerned with disputes over

22  material facts, and "factual disputes that are irrelevant or unnecessary will not be counted."

23  *Liberty Lobby, Inc.*, 477 U.S. at 248.  It is not the task of the court to scour the record in search

24  of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

25  nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

26  precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the

27   moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

28        At the summary judgment stage, the Court must view the evidence in the light most

1   favorable to the nonmoving party: if evidence produced by the moving party conflicts with

2   evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

3   forth by the nonmoving party with respect to that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152,

4   1158 (9th Cir. 1999).

5   **II.   Legal Claims**

6          A.    Incoming Mail

7          As an initial matter, Plaintiff argues that the opening of his mail violated his Fourth

8   Amendment right to be free from unreasonable searches and seizures.  It is well-settled that a

9   state prisoner has no reasonable expectation of privacy in his cell and is not entitled to Fourth

10  Amendment protection against unreasonable searches and seizures.  *See Hudson v. Palmer*, 468

11  U.S. 517, 527-28 (1984) ("we conclude that prisoners have no legitimate expectation of privacy

12  and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison

13  cells").  This analysis applies equally to an inmate's incoming mail.  *See Mitchell v. Dupnik*, 75

14  F.3d 517, 522 (9th Cir. 1996) (holding that pre-trial detainee has no reasonable expectation of

15  privacy in cell; no Fourth Amendment violation when inmate not present during search of legal

16  materials).

17         Moreover, even assuming that Plaintiff had a reasonable expectation of privacy, a

18  warrantless search of a prisoner's mail does not violate the Fourth Amendment if there is a

19  justifiable purpose of imprisonment or prison security.  *See United States v. Vallez*, 653 F.2d

20  403, 406 (9th Cir. 1981), *receded from on other grounds by United States v. Goseyun*, 789 F.2d

21  1386, 1387 (9th Cir. 1986) (per curiam).  Clearly, a search and temporary seizure of incoming

22  mail for potential contraband does not violate a prisoner's constitutional rights.  *See Ransom v.*

23  *Greenwood*, No. 06-56500, 2008 WL 2951340, at **1 (9th Cir. Aug. 1, 2008) (unpublished

24  memorandum disposition) (affirming district court's summary judgment against inmate who

25  claimed that defendants' search and seizure of mail violated Fourth Amendment); *Smith v. Boyd*,

26  945 F.2d 1041, 1043 (8th Cir. 1991) (upholding inspection of incoming mail); *Gaines v. Lane*,

27  790 F.2d 1299, 1304 (7th Cir. 1986) (upholding inspection of outgoing and incoming mail).

28  Thus, there is no Fourth Amendment violation.

1    The issue of whether a prison official can open legal materials outside of an inmate's

2  presence is more appropriately considered under the First Amendment.  Prisoners enjoy a First

3  Amendment right to send and receive mail.  *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.

4  1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  A prison, however, may adopt

5  regulations or practices which impinge on a prisoner's First Amendment rights as long as the

6  regulations are "reasonably related to legitimate penological interests."  *See Turner v. Safley*,

7  482 U.S. 78, 89 (1987).  Prison officials may institute procedures for inspecting "legal mail,"

8  e.g., mail sent between attorneys and prisoners.  *See Wolff v. McDonnell*, 418 U.S. 539, 576-77

9  (1974) (incoming mail from attorneys).  But the opening and inspecting of "legal mail" outside

10  the presence of the prisoner may have an impermissible "chilling" effect on the constitutional

11  right to petition the government.  *See O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996)

12  (citing *Laird v. Tatum*, 408 U.S. 1, 11 (1972))**.**

13    Here, the parties dispute whether the opened mail was considered "legal mail."  In order

14  to be classified as "confidential mail" or "legal mail," the California Code of Regulations

15  provides:

16    Incoming letters must show the name, title, return address and the office of
    persons listed in Section 3141 on the outside of the envelope to be processed

17    as confidential correspondence.  An attorney's return address must match the
    address listed with the State Bar.  A notice or request for confidentiality is not

18    required on the envelope.  Correspondence that is appropriately addressed
    with a return address that indicates it may be confidential shall be processed

19    and treated as confidential correspondence whether or not it is stamped as
    such.

20
21  Cal. Code. Regs. tit. 15, § 3143.[1]  Similarly, PBSP Operating Procedure Supplement No.

   54010.12.3(7) provides:
22
23    Incoming confidential correspondence must have the name, title, and return
    address of one of the officials or persons listed in the [California Code of

24    Regulations], Title 15, Section 3141(c).  Per the [California Code of
    Regulations], Title 15, Section 3143, the name of an agency or firm is not, in

25    itself, sufficient.  The return address must include the name or title of the
    specific attorney printed on the outside of the envelope.  For example, the title

26    "Attorney at Law" without the name of a specific attorney, "Law Offices of"

27    _____

28    [1]  Subsection (d) of Section 3141, referenced therein, provides, in part:  All incoming
   confidential mail from an attorney or legal service organization shall include the attorney's
   name, title, and return address of their office.

followed by the name of attorney/attorneys, or the name of a law firm is not sufficient.

Plaintiff argues that, PBSP's policy is contrary to the California Code of Regulations, and that the Defendants' interpretation of what "name" and "title" mean in the California Code of Regulations is arbitrary. Plaintiff urges that the "name" of the law firm, and the "title" of "Attorney at Law," should be sufficient. However, "[t]he Supreme Court ha[s] held that . . . prison officials [can] require both that the letters be specially marked with the name and address of the attorney and that the attorney communicate first with prison officials." *Sherman v. MacDougall*, 656 F.2d 527, 528 (9th Cir. 1981) (citing *Wolff v. McDonnell*, 418 U.S. 539, 575-77, 94 (1974)).

In *Wolff*, the Supreme Court was presented with the narrow issue of "whether letters determined or found to be from attorneys may be opened by prison authorities in the presence of the inmate or whether such mail must be delivered unopened if normal detection techniques fail to indicate contraband." *Wolff*, 418 U.S. at 575. Without specifying which constitutional right(s) might be violated when prison officials open mail from an inmate's attorney in the inmate's presence, the Court set forth several constitutionally appropriate prison procedures. *Id.* at 576. Most relevantly, the Court stated that it would be an appropriate procedure to require confidential/legal communication to be "specially marked as originating from an attorney, with his name and address being given." *Id.*

Because *Wolff* explicitly approves of the requirement in the California Code of Regulations, title 15, section 3143, and PBSP Operating Procedure Supplement No. 54010.12.3 that mail must be specially marked with an attorney's name and title in order to be considered confidential/legal, Defendants are entitled to judgment as a matter of law as to this claim.

Alternatively, Defendants are entitled to summary judgment based on qualified immunity. The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, the

1    Court must decide whether the facts alleged show the official's conduct violated a constitutional

2    right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful

3    in the situation he confronted.  *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v.*

4    *Callahan*, 555 U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity

5    analysis proceed in a particular sequence).  "[I]f no constitutional right would have been violated

6    were the allegations established, there is no necessity for further inquiries concerning qualified

7    immunity."  *Saucier*, 533 U.S. at 201.

8         Here, even assuming that the pieces of mail opened by Defendant Coney should have

9    been classified as "legal" or "confidential" mail, the law was not so clearly established that it

10   would have been clear to a reasonable officer that his conduct in opening the mail outside of

11   Plaintiff's presence was unlawful.  *See Powell v. Gibbons*, No. 10-17498, 2011 WL 4794926, at

12   *1 (9th Cir. Oct. 11, 2011) (unpublished memorandum disposition) (affirming dismissal of claim

13   that prison officials opened legal mail outside inmate's presence based on qualified immunity);

14   *Sherman*, 656 F.2d at 528 (reserving issue of whether there is a constitutional violation where a

15   prison official opens a prisoner's legal mail outside the prisoner's presence).

16        Accordingly, the Court GRANTS Defendants' motion for summary judgment on this

17   claim.

18        B.    Confiscated Food

19        Plaintiff alleges that, as an inmate classified in Privilege Group D, he may receive food

20   items, including ramen noodles, cheese spread, candy, beef sticks, and summer sausages.

21   However, according to Plaintiff, Defendant Lewis created a PBSP-specific policy, i.e. PBSP

22   Operating Procedure No. 806, Attachment E, disallowing the above mentioned items.  Plaintiff

23   complains that the differential treatment is without justification, and that the regulation is

24   overbroad, in violation of the First Amendment.

25        However, the "overbreadth" doctrine generally involves freedom-of-speech challenges.

26   *Gospel Mission v. of America v. Los Angeles*, 419 F.3d 1042, 1051 (9th Cir. 2005) (citing *United*

27   *States v. Salreno*, 481 U.S. 739, 745 (1987)).  A facial challenge must fail unless, at a minimum,

28   the challenged ordinance is directed narrowly and specifically at expression, or conduct

1   commonly associated with expression.  *See Nunez v. City of San Diego*, 114 F.3d 935, 950 (9th

2   Cir. 1997) (finding permissible First Amendment facial challenge to curfew statute prohibiting

3   conduct that is necessary precursor to most public expression).  Here, as Defendants point out,

4   the challenged regulation is not directed at any type of expression or conduct commonly

5   associated with expression.  Nor does Plaintiff attempt to argue as such.  Accordingly, Plaintiff's

6   facial challenge to the PBSP regulation fails.

7        Generally, applicable regulations of conduct implicate the First Amendment only if they

8   (1) impose a disproportionate burden on those engaged in First Amendment activities, or (2)

9   constitute governmental regulation of conduct with an expressive element.  *See Talk of the Town*

10  *v. Dept. of Fin. and Bus. Serv.*, 343 F.3d 1063,1068 (9th Cir. 2003) (citing *United States v.*

11  *O'Brien*, 391 U.S. 367 (1968)).  Here, as Defendants point out, the challenged regulation does

12  not burden First Amendment activities or regulate conduct with an expressive element.  Nor does

13  Plaintiff attempt to argue that it does.  Accordingly, Plaintiff's as-applied challenge to the PBSP

14  regulation also fails.

15       Alternatively, Defendants are entitled to summary judgment based on qualified

16  immunity.  Here, even assuming that the PBSP regulation was overbroad, the law was not so

17  clearly established at the time that it would have been clear to a reasonable officer that a

18  regulation that does not affect expression or conduct associated with expression could be

19  sustained under a First Amendment overbreadth challenge.  *See Gospel Mission of America*, 419

20  F.3d at 1051 (recognizing that outside of the First Amendment, and other "limited settings, and

21  absent a good reason, [the Supreme Court] not extend an invitation to bring overbreadth

22  claims."); *Nunez*, 114 F.3d at 949 n.11 (declining to apply overbreadth outside of the First

23  Amendment).

24       Accordingly, the Court GRANTS Defendants' motion for summary judgment on this

25  claim.

26       C.     State Law Claims

27       Because the parties are not diverse, the Court's jurisdiction over the instant action is

28  based on Plaintiff's federal claims.  To the extent the Court has jurisdiction over the state law

1   claim, such jurisdiction is supplemental in nature.  *See* 28 U.S.C. § 1367(a).  A district court may

2   decline to exercise supplemental jurisdiction where "the district court has dismissed all claims

3   over which it has original jurisdiction."  *See* 28 U.S.C. § 1367(c)(3).  Where a district court has

4   granted summary judgment on the sole federal claim, the district court, pursuant to § 1367(c)(3),

5   may properly decline to exercise supplemental jurisdiction over the remaining state law claim.

6   *See Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1169 (9th Cir. 2002).  Here, having

7   considered the matter, and in light of the resolution of the federal claims, the Court declines to

8   exercise jurisdiction over Plaintiff's state law claim, pursuant to Section 1367(c)(3), and

9   dismisses it without prejudice.  Plaintiff may pursue his state law claim in state court.  *See*

10  *Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996) (dismissal of pendent state

11  claims following dismissal of federal claims must be without prejudice), *rev'd on other grounds*

12  *by Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir. 1997).

### CONCLUSION

14       Defendants' motion for summary judgment is GRANTED.  Judgment is entered in favor

15  of Defendants.  The Clerk shall terminate all pending motions and close the file.

16       IT IS SO ORDERED.

17  DATED:  __8/27/12__

18  LUCY H. KOH
    United States District Judge